O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

IRMA PEREZ,                          )    NO. CV 07-06726-MAN
                                     )
            Plaintiff,               )
                                     )    MEMORANDUM OPINION
       v.                            )
                                     )    AND ORDER
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
            Defendant.               )
_____)

        Plaintiff filed a Complaint on October 25, 2007, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's applications for a period of disability ("POD"), disability
insurance benefits ("DIB"), and supplemental security income ("SSI").
On February 28, 2008, the parties consented to proceed before the
undersigned United States Magistrate Judge.  The parties filed a Joint
Stipulation on December 9, 2008, in which:  plaintiff seeks an order
remanding the matter for the consideration of evidence not properly
addressed by the ALJ; and defendant seeks an order affirming the
Commissioner's decision.  The Court has taken the parties' Joint
Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On August 30, 2005, plaintiff filed applications for a POD, DIB, and SSI. (Administrative Record ("A.R.") 60-62, 245-46.) Plaintiff alleges an inability to work since December 1, 2002, due to diabetes, high blood pressure, high cholesterol, obesity, arthritis, kidney problem(s), back injury, leg pain, depression, and anxiety. (A.R. 41, 49, 120.) She has past relevant work experience as an "in-home aid."[1] (A.R. 69, 120.)

The Commissioner denied plaintiff's applications initially (A.R. 49-53) and upon reconsideration (A.R. 41-46). Thereafter, plaintiff filed a written request for hearing, and on October 11, 2006, plaintiff, who was not represented by counsel, testified, with the assistance of a Spanish language interpreter, at a hearing before Administrative Law Judge Robert A. Evans ("ALJ"). (A.R. 10, 248-57.) On October 23, 2006, the ALJ denied plaintiff's claims, and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision. (A.R. 3-5, 21-27.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his written decision, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2007, and plaintiff has not engaged in substantial gainful activity since December 1, 2002, her alleged disability onset date. (A.R. 23.)

---

[1]   Plaintiff worked as an "in-home aid" from June 1986, through December 1, 2002. (A.R. 69.)

The ALJ further found that plaintiff suffers from "severe" back pain and obesity, but she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. 23-24.)

The ALJ determined that plaintiff retains the residual functional capacity ("RFC") to perform work that would require her to: lift and carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for 6 hours out of an 8 hour workday; stand every 2 hours to stretch for 5 to 10 minutes, secondary to back pain; perform no fine manipulation, secondary to her allegations of neuropathy; and secondary to her obesity, never climb, occasionally balance, stoop, kneel, crouch, crawl, and not perform work that would require her to walk on uneven terrain or work at heights. (A.R. 24.) The ALJ further found that plaintiff's statements concerning the intensity, persistence, and limiting effects of her subjective pain symptoms were "not entirely credible." (A.R. 26.)

Based on the ALJ's RFC assessment and the testimony of a vocational expert, the ALJ found that plaintiff is capable of performing her past relevant work as a home attendant. (A.R. 26.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from December 1, 2002, through the date of the ALJ's decision. (A.R. 27.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's

3

1  decision to determine whether it is free from legal error and supported
2  by substantial evidence in the record as a whole.  Orn v. Astrue, 495
3  F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant
4  evidence as a reasonable mind might accept as adequate to support a
5  conclusion.'"  Id. (citation omitted).  The "evidence must be more than
6  a mere scintilla but not necessarily a preponderance."  Connett v.
7  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  While inferences from the
8  record can constitute substantial evidence, only those "'reasonably
9  drawn from the record'" will suffice.  Widmark v. Barnhart, 454 F.3d
10 1063, 1066 (9th Cir. 2006)(citation omitted).

11

12     Although this Court cannot substitute its discretion for that of
13 the Commissioner, the Court nonetheless must review the record as a
14 whole, "weighing both the evidence that supports and the evidence that
15 detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y of
16 Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also
17 Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is
18 responsible for determining credibility, resolving conflicts in medical
19 testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d
20 1035, 1039-40 (9th Cir. 1995).

21

22     The Court will uphold the Commissioner's decision when the evidence
23 is susceptible to more than one rational interpretation.  Burch v.
24 Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may
25 review only the reasons stated by the ALJ in his decision "and may not
26 affirm the ALJ on a ground upon which he did not rely."  Orn, 495 F.3d
27 at 630; see also Connett, 340 F.3d at 874.  The Court will not reverse
28 the Commissioner's decision if it is based on harmless error, which

4

exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following five issues:  (1) whether the ALJ properly apprised plaintiff of her right to counsel and whether her waiver of counsel was properly obtained; (2) whether the ALJ fully and fairly developed the record; (3) whether the ALJ erred by failing to find that plaintiff's diabetes with neuropathy was a "severe" impairment; (4) whether the ALJ erred in determining that plaintiff is capable of returning to her past relevant work; and (5) whether the ALJ properly evaluated plaintiff's subjective symptom testimony.  (Joint Stipulation ("Joint Stip.") at 3-4.)  The Court addresses plaintiff's first and second issues together, because they are interrelated.

**I.   <u>The ALJ Failed To Develop The Record Adequately And To Ensure That Plaintiff's Interests Were Protected, Despite The Fact That Plaintiff Was Proceeding Without Counsel.</u>**

Plaintiff had a statutory right to counsel at the administrative hearing, which she could knowingly and intelligently waive.  <u>Duns v. Heckler</u>, 586 F.Supp. 359, 364 (N.D. Cal. 1984)(*citing* <u>Ware v. Schweiker</u>, 651 F.2d 408 (5th Cir. 1982)); <u>Floyd v. Schweiker</u>, 550 F.Supp. 863 (N.D. Ill. 1982).  Even if her waiver was deficient, plaintiff must

5

demonstrate prejudice or unfairness in the proceedings to obtain a remand. <u>Hall v. Sec'y of Health, Educ. & Welfare</u>, 602 F.2d 1372, 1378 (9th Cir. 1979). The real issue, however, is not whether the waiver was knowing or intelligent, but whether, without the representation, the ALJ met his heightened duty "to conscientiously and scrupulously probe into, inquire of, and explore for all the relevant facts" to protect plaintiff's interests. <u>Vidal v. Harris</u>, 637 F.2d 710, 713 (9th Cir. 1981); <u>Cox v. Califano</u>, 587 F.2d 988 (9th Cir. 1978). This duty includes diligently ensuring that both favorable and unfavorable facts and circumstances are elicited at the administrative hearing. <u>Key v. Heckler</u>, 754 F.2d 1545, 1551 (9th Cir. 1985). The ALJ must fully and fairly develop the record, and when a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all the relevant facts." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001). Only if plaintiff can demonstrate prejudice or unfairness in the administrative proceeding, as a result of not having counsel present, is remand warranted. <u>Vidal</u>, 637 F.2d at 713.

The Manual on Social Security Administration Hearings, Appeals and Litigation Law (HALLEX) I-2-6-52 sets forth the procedures ALJs are to follow to ensure that a plaintiff proceeding without counsel has made an informed choice to waive representation. HALLEX I-2-6-52 states:

> [I]f the claimant is unrepresented, the ALJ must ensure that
> the claimant is capable of making an informed choice about
> representation. For example, the ALJ should ask an
> unrepresented claimant the following questions *on the record*:

• Did you receive the hearing acknowledgment letter and its enclosure(s)? (If not, the ALJ will provide the claimant with a copy and the opportunity to read the letter.) The ALJ will enter into the record the acknowledgment letter and enclosure(s) sent to the unrepresented claimant.

• Do you understand the information contained in that letter concerning representation? (If not, the ALJ will explain the claimant's options regarding representation, as outlined in the acknowledgment letter. Specifically, the ALJ will explain the availability of both free legal services and contingency representation as well as access to organizations that assist individuals in obtaining representation. See I-2-0-20 C., Unrepresented Claimant, I-2-0-91 Sample - Acknowledgment Letter - Oral Hearing Requested - Unrepresented Claimant, and I-2-0-92 Sample - Enclosure to Letter to Unrepresented Claimant.)

*Once the ALJ has determined that the claimant is capable of making an informed choice*, he or she will either secure *on the record* the claimant's decision concerning representation, or obtain from the claimant a written waiver of the claimant's right to representation, which will be marked as an exhibit. See I-2-6-98 WAIVER OF REPRESENTATION.

7

1 (*Id;* emphasis added.)

2

3       In the present case, it is unclear whether plaintiff knowingly and

4 intelligently waived her right to counsel at the administrative hearing.

5 Although the record contains a one-page "Waiver of Representation,"[2]

6 dated October 11, 2006, signed by plaintiff, and marked as an exhibit by

7 the ALJ, there was no dialogue on the record between the ALJ and

8 plaintiff regarding whether plaintiff understood her right to

9 representation and had made an informed decision about waiving her right

10 to representation.  Critically, plaintiff required the assistance of a

11 Spanish language interpreter at the hearing, yet there is nothing in the

12 record to indicate that the written waiver was translated for plaintiff

13 from English into Spanish.  The record reflects only that, at the

14 commencement of the hearing, the ALJ stated to plaintiff that "[you]

15 have waived your rights to representation.  You're here representing

16 yourself." (A.R. 250.)  There was no reply from plaintiff.  As it

17 cannot be determined from the record that plaintiff knew and understood

18 the right she relinquished, plaintiff's waiver of her right to

19 representation was not obtained properly.

20

21       An invalid waiver of representation alone is not enough, however,

22 to require a remand of this case.  <u>Vidal</u>, 637 F.2d at 713.  As defendant

23 _____

24 [2]     The Waiver of Representation states:

25       I have been informed in writing of my right to be represented
      at today's hearing by an attorney or other qualified person.
26      I am presently not represented, and it is my wish to proceed
      without representation.  I understand that following this
27      hearing, I may obtain representation to pursue my appeal or
      further proceedings.

28 (A.R. 57.)

correctly points out, to merit remand, plaintiff must show that, as a result of not having counsel present, she was prejudiced in the administrative proceeding.  (Joint Stip. at 9-11.)

Plaintiff argues (Joint Stip. at 12) that she was prejudiced by the ALJ's failure to meet his heightened duty, given the absence of counsel for plaintiff, to develop the record by investigating the facts fully and fairly and probing conscientiously to elicit all relevant information.  Tonapetyan, 242 F.3d at 1150.  Specifically, plaintiff argues that she was prejudiced because, if represented, her counsel would have delved into her medical history, treatment, and medications for diabetes, anxiety, depression, and lower extremity pain and attendant limitations, none of which were adequately explored by the ALJ.  (Joint Stip. at 16.)  For the reasons set forth below, the Court agrees.

As an initial matter, plaintiff directs the Court's attention to the fact that the entire administrative hearing lasted only 14 minutes. (Joint Stip. at 12-13.)  This brief, 14-minute time-frame included the ALJ's questions to plaintiff, which were translated from English to Spanish, plaintiff's testimony, which was translated from Spanish to English, and the ALJ's examination of the vocational expert.  (A.R. 250-57.)  This fact alone calls into question whether the ALJ met his heightened duty to fully and fairly develop the record to ensure that plaintiff's interests were protected.

Moreover, plaintiff argues that, had counsel been present, questions regarding the myriad medications plaintiff was taking and

their side-effects would have been asked.[3]   (Joint Stip. at 12.)
Although plaintiff indicated on a "Medications" form that she was taking
16 different medications for several conditions (A.R. 130-32), the ALJ
asked only two questions regarding plaintiff's medication.   First, the
ALJ asked plaintiff what medication she takes to relieve her back pain,[4]
to which plaintiff responded that she was taking Ibuprofen. (A.R. 151-
52.)   Second, the ALJ asked whether plaintiff was taking medication for
high blood pressure, to which plaintiff responded, "Yes.   But there's
times that the doctor has told me that I have it very high although I'm
taking the medication." (A.R. 253-54.)   Not only did the ALJ fail to
ask follow-up questions about these particular medications and their
side effects, but the ALJ also failed to ask any questions whatsoever
regarding the other 14 medications plaintiff was taking.

Moreover, plaintiff argues, counsel would have inquired into
plaintiff's psychiatric treatment, specifically plaintiff's anxiety and
depression, which cause significant non-exertional limitations affecting
plaintiff's ability to engage in substantial gainful activity. (Joint
Stip. at 16.)   For instance, on March 1, 2006, Dianne L. DeFreece,

---

[3]   The record reflects that plaintiff was taking the following
medications:  (1) neurontin for nerve pain; (2) legatrin for lower body
pain; (3) alprazolam for anxiety; (4) fluoxetine for depression; (5)
hydrochlorothiazide for kidney disease; (6) cozaar for high blood
pressure; (7) pravachol for high cholesterol; (8) nifedipine for angina;
(9) ranitidine for heartburn; (10) calcium carbonate for osteoporosis;
(11) metformin for diabetes; (12) glyburide for diabetes; (13) humulin
for diabetes; (14) docusate sodium for bowel movements; (15) glucosamine
for joint health; and (16) asprin for heart health.  (A.R. 78, 130-32.)

[4]   Critically, the ALJ's only inquiry regarding plaintiff's pain was
directed to her *back* pain, despite the fact that plaintiff indicated on
the Disability Report - Appeal form that she was taking two medications,
*i.e.*, neurontin and legatrin, for her *leg* pain.  (A.R. 78.)

Psy.D., noted that plaintiff exhibited suicidal ideation with deprecating thoughts, and plaintiff was tearful, depressed, irritable, and anxious. (A.R. 211.) Dr. DeFreece diagnosed plaintiff with depressive disorder, not otherwise specified, and noted that plaintiff was taking Xanax and Prozac. (*Id.*) However, the ALJ failed to ask any questions regarding the impact of plaintiff's depression and anxiety on her ability to work or to inquire whether plaintiff received any follow-up psychiatric treatment for her conditions.

In addition, plaintiff suggests that there could be additional, pertinent medical evidence regarding plaintiff's diabetes with neuropathy and attendant lower extremity pain that the ALJ failed to investigate. (Joint Stip. at 15, 19-20.) For instance, while there is evidence that, on December 9, 2004, an EMG was performed of plaintiff's lower extremities, which produced normal results, it was recommended that plaintiff undergo nerve conduction studies of "both lower extremities to rule-out peripheral neuropathy." (A.R. 178.) There is no evidence that any nerve conduction study was performed, and if it was, the results are not in the current record. Additionally, although the ALJ recognized that plaintiff "has neuropathy" and took into account plaintiff's upper extremity neuropathy in assessing plaintiff's RFC (*see* A.R. 23-24 -- no fine manipulation, secondary to neuropathy), the ALJ failed to consider adequately plaintiff's lower extremity neuropathy and leg pain, which is well-documented in the record. (*See, e.g.*, A.R. 147-48, 154, 156-57, 204, 216.) Clearly, additional investigation into these matters could bear directly on plaintiff's disability determination.

Had the ALJ explored these issues at the hearing, the additional evidence adduced might have altered the ALJ's decision.  In the Court's view, plaintiff has met her burden to demonstrate that, if represented at the hearing, counsel could and would have adduced evidence that may have altered the result.

Accordingly, the ALJ's failure to meet his heightened duty to "conscientiously and scrupulously probe into, inquire of, and explore all the relevant facts" at the hearing so as to protect plaintiff's interests, especially in view of the fact that plaintiff was unrepresented at the hearing, constitutes reversible error.  Vidal, 637 F.2d at 713.  On remand, the ALJ should further develop the record by conducting a proper inquiry of the aforementioned issues, and the ALJ should obtain any and all outstanding medical records so that a proper disability determination may be made on a complete record.[5]

## II. In Concluding That Plaintiff's Diabetes With Neuropathy Is Not A "Severe" Impairment, The ALJ Failed To Consider Medical Evidence Of Record, And His Conclusion Is Not Adequately Supported By Substantial Evidence.

Under the Commissioner's five-step process for evaluating

---

[5]   Defendant notes in his portion of the Joint Stipulation that, although plaintiff retained counsel two weeks after receiving the ALJ's unfavorable decision, there is no indication in the record that counsel attempted to secure any additional information or medical records that might help plaintiff's case.  (Joint Stip. at 23.)  While defendant is correct that counsel should have endeavored to supplement the record, counsel's failure to do so does not absolve the ALJ from his failure to develop the record while plaintiff was unrepresented during the administrative process.

12

disability claims, an impairment can be found not severe at step two only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to do basic work activities.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996).  The severity requirement at this point in the analysis is nothing more than a _de minimus_ screening device to dispose of groundless claims.  _Id._ at 1290; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153 (1987).  In assessing whether this threshold has been met, the ALJ must consider the combined effects of all claimed impairments, as well as a claimant's subjective symptoms.  <u>Smolen</u>, 80 F.3d at 1290.

In finding that plaintiff's diabetes with neuropathy was not "severe," the ALJ stated that:

> [Plaintiff] has diabetes with early nephropathy[6] and possible neuropathy.[7]  However, [plaintiff's] early nephropathy does not impose any functional limitations upon her ability to perform basic work-related activities.  Although she has neuropathy, she is able to use her hands and walks with a normal gait.  _She has_ full motor power and _normal sensation and reflexes of all extremities_.

---

[6]    According to http://diabetes.webmd.com, diabetic nephropathy is "damage to your kidneys caused by diabetes.  In severe cases, it can lead to kidney failure."

[7]    According to http://diabetes.webmd.com, neuropathy is defined as "nerve disease or damage."  According to http://medical-dictionary.com, diabetic neuropathy includes "any of several clinical types of peripheral neuropathy (sensory, motor autonomic, and mixed) occurring with diabetes mellitus; the most common is a chronic, symmetrical sensory polyneuropathy affecting first the nerves of the lower limbs and often affecting autonomic nerves."

1  (A.R. 23; emphasis added.)

2

3        After reviewing the record as a whole, substantial evidence

4  undermines the ALJ's conclusion that plaintiff's diabetes with

5  neuropathy is not a "severe" impairment.  The ALJ's brief discussion of

6  the evidence regarding plaintiff's neuropathy, especially plaintiff's

7  lower extremity neuropathy, mischaracterizes the medical evidence and

8  does not fairly represent the significance of this impairment and the

9  limitations arising from it, as reflected in the record.[8]  For instance,

10  as plaintiff correctly notes, plaintiff's medical records document that

11  she has diabetes mellitus with neuropathy (A.R. 156, 210), lower leg

12  paresthesia,[9] paresthesia left foot (A.R. 156, 210), shin numbness right

13  greater than left and burning sensation to left greater toe and medial

14  side of foot (A.R. 157), decreased sensation to front of lower legs and

15  left medial side of foot, capillary refill greater than three seconds,

16  prescribed diabetic shoes (A.R. 202, 204-08), abnormal sensation in her

17  feet (A.R. 163) leg cramps (A.R. 154), and bilateral leg pain (A.R.

18  148).  The ALJ's interpretation of this evidence -- that plaintiff has

19  "normal sensation . . . of all extremities" -- does not accurately

20

---

21  [8]     Even if viewed as an implicit rejection of plaintiff's treating
     physician's opinions, rather than a mischaracterization of the medical
22  evidence, the ALJ's failure to set forth specific and legitimate reasons
     for the rejection still constitutes error.  *See* Lester v. Chater, 81
23  F.3d 821, 830 (9th Cir. 1995)(when the ALJ rejects the opinion of a
     treating physician, even if it is contradicted, the ALJ may reject that
24  opinion only by providing specific and legitimate reasons for doing so,
     supported by substantial evidence in the record); Gallant v. Heckler,
25  753 F.2d 1450, 1456 (9th Cir. 1984)(it is error for an ALJ to ignore or
     misstate the competent evidence in the record to justify his
26  conclusion).

27  [9]     According to http://medical-dictionary.com, paresthesia is defined
     as an "abnormal tactile sensation, described as burning, pricking,
28  tickling, tingling, or creeping, which indicates nerve irritation."

14

reflect the medical evidence of record.  (A.R. 23.)

Indeed, the numbness, pain, cramping, and burning sensation in plaintiff's lower extremities, about which she complained to her treating physicians and which caused loss of feeling in her lower legs and left foot and required her to wear prescription shoes, would likely have "more than a minimal effect" on plaintiff's ability to work, particularly with respect to plaintiff's ability to stand and walk, which the ALJ determined plaintiff could do for six hours out of an eight-hour workday.  (A.R. 24.)  A more conscientious inquiry into these areas should have been performed by the ALJ to determine properly whether plaintiff retains the RFC to perform her past relevant work.

Accordingly, the record as a whole demonstrates that plaintiff's diabetes with neuropathy would have more than a minimal effect on plaintiff's ability to function in the workplace, and the ALJ's finding to the contrary is not based on substantial evidence and constitutes error.

**III.** **The ALJ Failed To Address Adequately The Impact Of Plaintiff's Obesity On Her Ability To Perform Her Past Relevant Work**.

Plaintiff contends that the ALJ failed to analyze the impact of plaintiff's obesity on her other impairments, including her diabetes mellitus.  (Joint. Stip. at 36.)  Plaintiff further contends that "the ALJ should have assessed, per SSR 02-1p, whether or not the impact of the combined effect of obesity and [d]iabetes [m]ellitus, including neuropathy, paresthesia, leg cramps, leg pain, numbness and burning of

her shin and feet, would affect the [p]laintiff's ability to perform exertional functions, including standing and walking, lifting, carrying, pushing, and pulling, as well as whether it would affect her ability to function in the work environment and sustain a function over time." (Joint Stip. at 36-37.) The Court agrees.

Social Security Ruling ("SSR") 02-1p provides that the Administration should consider "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. . . . The combined effects of obesity with other impairments may be greater than might be expected without obesity. . . . [W]e will explain how we reached our conclusions on whether obesity caused any physical or mental limitations."

While obesity itself is not a "disabling" impairment, Listings 1.00Q, 3.00I, and 4.00F describe muscular, respiratory, and cardiovascular problems that can result in limitations arising from obesity. Applicable regulations provide that:[10]

> Obesity is a medically determinable impairment that is often associated with disturbance of the [musculoskeletal, respiratory, and cardiovascular] system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with [musculoskeletal, respiratory, and cardiovascular] impairments

---

[10] Listing 1.00Q addresses musculoskeletal impairments; Listing 3.00I addresses respiratory impairments; and Listing 4.00F addresses cardiovascular impairments.

can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P, Appx. I, § 1.00Q, 3.00I, and 4.00F.

In addition to the Commissioner's regulations, SSR 02-01p recognizes obesity as a "medically-determinable impairment" and states that administrative law judges should consider the combined effects of obesity with other impairments under the Listing of Impairments when assessing a claimant's RFC.[11]  SSR 02-01p, adopting the National Institutes of Health's (NIH) classification and diagnosis of obesity according to Body Mass Index (BMI), considers anyone with a BMI over 30 to be "obese."  The Clinical Guidelines recognize three levels of obesity.  Level 1 includes BMIs of 30.0-34.9.  Level II includes BMIs of 35.0-39.9.  Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40.  Soc. Sec. R. 02-01p.

In the present case, the ALJ failed to discharge the

---

[11]   Social Security Ruling 02-01p superseded Social Security Ruling 00-3p, although it did not alter Social Security Ruling 00-3p in any substantive part.  20 C.F.R. Pt. 404, Subpt. P, Appx. I, § 1.00Q, 3.00I, and 4.00F.

Administration's responsibilities under SSR 02-1p.  The medical evidence conclusively establishes that plaintiff suffers from "extreme" obesity, a finding that is well-documented by the record and uncontested by the Commissioner.[12]  (*See, e.g.*, A.R. 137, 140, 145, 148, 154, 161-63, 214, 216-17.)  At the hearing, plaintiff testified that she weighs 253 pounds and is 5 feet tall.[13]  (A.R. 251.)  Using plaintiff's weight of 253 pounds and height of 5 feet,  plaintiff's BMI is 49.4.[14]  Although the BMI levels are flexible guidelines and "do not correlate with any specific degree of functional loss," plaintiff's resulting BMI calculation suggests that her "extreme" obesity likely has a profound impact on her ability to perform work activities and presents a significant issue that the ALJ should have carefully explored in greater detail in assessing her RFC.  SSR 02-01p.

In assessing plaintiff's RFC, the ALJ concluded that plaintiff is capable of engaging in medium work, *i.e.*, capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently and capable of standing and/or walking for 6 hours out of an 8 hour workday.  (A.R. 24.)  Without the benefit of a detailed analysis by the ALJ of the impact of plaintiff's extreme obesity on her ability to perform work activities, it is difficult to accept the conclusion that plaintiff -- who stands only 5 feet tall, weighs over 250 pounds, suffers from

---

[12]   The ALJ found that plaintiff suffers from "severe" obesity, along with "severe" back pain.  (A.R. 23.)

[13]   In an August 16, 2006 Disability Report, plaintiff stated that she was 5 feet tall and weighed 285 pounds.  (A.R. 119.)

[14]   Plaintiff's BMI was calculated by using the BMI calculator found at the Centers for Disease Control and Prevention website <http://www.cdc.gov/healthyweight/assessing/bmi/>.

1   "severe" back pain (A.R. 23), and suffers from medically documented

2   diabetes with neuropathy in her lower extremities (A.R. 156, 210), shin

3   numbness (A.R. 157), burning sensation in left greater toe (A.R. 157),

4   leg cramps (A.R. 154), and bilateral leg pain (A.R. 148) -- is capable

5   of standing and/or walking for six hours out of an eight-hour workday on

6   a regular and continuing basis. *See* <u>Barrett v. Barnhart</u>, 355 F.3d 1065,

7   1068 (7th Cir. 2004)(stating that "many people who are not grossly obese

8   and do not have arthritic knees find it distinctly uncomfortable to

9   stand for two hours at a time.  To suppose that [the plaintiff, who

10  weighed more than 300 pounds and was only 5 feet 1 inch tall,] could do

11  so day after day on a factory floor borders on the fantastic").

12

13      The ALJ is required to do more than simply state that he

14  "considered all symptoms and the extent to which these symptoms can

15  reasonably be accepted as consistent with the objective medical

16  evidence."  (A.R. 24.)  Rather, the ALJ must specifically take into

17  account the impact of plaintiff's obesity on her other impairments,

18  whether severe or not, and the ALJ must "explain how [he] reached [his]

19  conclusions."  SSR 02-1p.  His failure to do so here constitutes error.

20

21      Accordingly, remand is appropriate to allow the ALJ to re-assess

22  his RFC finding, paying particular attention to the significant impact

23  plaintiff's extreme obesity may have on her other impairments and on her

24  ability to perform work activities on a sustained and competitive basis.

25  ///

26  ///

27  ///

28  ///

1    **IV.   The ALJ Failed To Provide The Requisite Clear And Convincing**

2         **Reasons For Rejecting Plaintiff's Subjective Pain Testimony.**

3

4         Plaintiff alleges that the ALJ erred in his consideration of

5    plaintiff's subjective symptom testimony.  (Joint Stip. at 41-44, 47-

6    48.)  For the reasons set forth below, the Court agrees.

7

8         Once a disability claimant produces objective evidence of an

9    underlying physical impairment that is reasonably likely to be the

10   source of her subjective symptom(s), all subjective testimony as to the

11   severity of the symptoms must be considered.  Moisa v. Barnhart, 367

12   F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345

13   (9th Cir. 2001)(en banc); see also 20 C.F.R. § 404.1529(a) (explaining

14   how pain and other symptoms are evaluated).  "[U]nless an ALJ makes a

15   finding of malingering based on affirmative evidence thereof, he or she

16   may only find an applicant not credible by making specific findings as

17   to credibility and stating clear and convincing reasons for each."

18   Robbins, 466 F.3d at 883.  Further, an ALJ may not rely solely on the

19   absence of objective medical evidence supporting the degree of pain

20   alleged as a basis for finding that a plaintiff's testimony regarding

21   subjective symptoms is not credible.  Fair v. Bowen, 885 F.2d 597,

22   601-02 (9th Cir. 1989); Stewart v. Sullivan, 881 F.2d 740, 743-44 (9th

23   Cir. 1989).

24

25        In her filings with the Commissioner and in her testimony, and

26   throughout the medical evidence of record, plaintiff described various

27   subjective symptoms from which she claims to suffer.  Plaintiff

28   testified that she stopped working because of her back pain, diabetes,

20

and arthritis.  (A.R. 251.)  Plaintiff further testified that she gets "very tired" and has "a lot of pain on [sic] [her] back," for which she takes medication.  (A.R. 251-52.)  Throughout the medical records, there is evidence of plaintiff's complaints of:  neuropathy in her lower extremities (A.R. 156, 210); lower leg paresthesia (id.); burning sensation in her left greater toe and medial side of foot (A.R. 157); shin numbness (id.); leg cramps (A.R. 154); decreased sensation to front of lower legs (A.R. 202, 204-08); and bilateral leg pain (A.R. 148).  In a Function Report - Adult, plaintiff stated that before her illnesses, injuries, or conditions, she could "bend over, do full house chores, [and] walk long distances."  (A.R. 93.)  She further stated that she cooks and irons while seated, and is able to perform limited cleaning, with breaks, approximately two to three times weekly.  (A.R. 26, 94.)  Plaintiff claimed that she cannot go grocery shopping without assistance.  (A.R. 95.)  Plaintiff further claimed that she has difficulty talking to people, because she feels depressed, is unable to handle stress, and gets scared easily.  (A.R. 97-98.)  Plaintiff stated that she can lift less than 25 pounds, walk "a few blocks," stand for a "limited time," and "while standing, [she] need[s] to take breaks [to] sit" every "15 minutes or so." (A.R. 97.)   In a Pain Questionnaire, plaintiff claimed that she has pain daily in her back and legs, and her "legs get numb but hurt at the same time [and her] back [has] just sharp pain," which lasts "sometimes a few hours, sometimes it's all day." (A.R. 126.)  Plaintiff stated that she takes cyclobenzaprine and gabapentin daily for the pain, but the medications make her sleepy. (A.R. 126-27.)

In his written decision, the ALJ found that plaintiff suffers from

21

the "severe" impairments of obesity and back pain, both of which are medically determinable impairments that reasonably could cause the subjective pain symptoms and attendant limitations about which plaintiff complains.[15]   (A.R. 23.)   However, the ALJ rejected plaintiff's statements regarding the nature and extent of her pain, without making any specific findings regarding plaintiff's credibility.   (A.R. 26.) Indeed, the entirety of the ALJ's analysis of plaintiff's credibility is as follows:

> [Plaintiff] alleges difficulty standing and walking for prolonged periods.  She claims she can lift less than 25 pounds and walk 3 to 4 blocks before needing to rest for 10 minutes. [Plaintiff] also alleges that she needs to sit while cooking and ironing and must take breaks while performing the household chores that she does two to three times weekly.

> After considering the evidence of record, the undersigned finds that [plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

>    . . . .

---

[15]   Although the ALJ found that plaintiff's diabetes with neuropathy was not a "severe" impairment, that finding was, as discussed *supra*, erroneous.  (A.R. 24.)  The record evidence establishes that plaintiff's diabetes with neuropathy is a medically determinable impairment that reasonably could cause the pain and attendant limitations about which plaintiff complains.  (A.R. 156-57, 202, 204-08, 210.)

1    In her Function Report - Adult, [plaintiff] stated that she
2    cooks and irons while seated and takes breaks while doing
3    household chores.  She reported that her hobbies are reading
4    and watching television.

5

6    (A.R. 26.)  The ALJ's rejection of plaintiff's subjective complaints of
7    pain and attendant limitations, without setting forth any clear and
8    convincing reasons for doing so, constitutes error.

9

10       Although the Commissioner now attempts to justify the ALJ's
11   insufficient credibility analysis by offering post-hoc rationale to
12   support it (Joint Stip. at 44-47), a reviewing court cannot affirm the
13   denial of benefits based on a reason not stated or a finding not made by
14   the ALJ, and defendant's after-the-fact attempt to supply an acceptable
15   basis for the ALJ's decision to reject the credibility of plaintiff's
16   subjective symptom statements is unavailing.  *See, e.g.,* Connett at 874
17   (noting that a reviewing court is "constrained to review the reasons the
18   ALJ asserts," and an ALJ's decision cannot be affirmed on the basis of
19   evidence he did not discuss); Pinto v. Massanari, 249 F.3d 840, 847-48
20   (9th Cir. 2001)(an agency decision cannot be affirmed based on a ground
21   that the agency did not invoke in making its decision); *see also* Barbato
22   v. Comm'r of Soc. Sec. Admin., 923 F. Supp. 1273, 1276 n.2 (C.D. Cal.
23   1996)(remand is appropriate when a decision does not adequately explain
24   how a decision was reached, "[a]nd that is so even if [the Commissioner]
25   can offer proper post hoc explanations for such unexplained
26   conclusions," for "the Commissioner's decision must stand or fall with
27   the reasons set forth in the ALJ's decision, as adopted by the Appeals
28   Council")(citation omitted).

23

1    Accordingly, the ALJ's rejection of plaintiff's credibility,

2    without setting forth clear and convincing reasons for the rejection,

3    constitutes reversible error.  On remand, the ALJ must provide reasons,

4    if they exist and are in accordance with the requisite legal standards,

5    for discrediting plaintiff's pain testimony.

6

7    **V.    Remand Is Required.**

8

9    The decision whether to remand for further proceedings or order an

10   immediate award of benefits is within the district court's discretion.

11   Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no

12   useful purpose would be served by further administrative proceedings, or

13   where the record has been fully developed, it is appropriate to exercise

14   this discretion to direct an immediate award of benefits.  *Id.* at 1179

15   ("the decision of whether to remand for further proceedings turns upon

16   the likely utility of such proceedings").  However, where there are

17   outstanding issues that must be resolved before a determination of

18   disability can be made, and it is not clear from the record that the ALJ

19   would be required to find the claimant disabled if all the evidence were

20   properly evaluated, remand is appropriate.  *Id.*

21

22   Here, remand is appropriate to allow the ALJ an opportunity to

23   remedy the above-mentioned deficiencies and errors.  *See, e.g.,* Benecke

24   v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further

25   proceedings is appropriate if enhancement of the record would be

26   useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.

27   1989)(remand appropriate to remedy defects in the record).

28

                                    24

1

**CONCLUSION**

2

3       Accordingly, for the reasons stated above, IT IS ORDERED that the

4   decision of the Commissioner is REVERSED, and this case is REMANDED for

5   further proceedings consistent with this Memorandum Opinion and Order.

6

7       IT IS FURTHER ORDERED that the Clerk of the Court shall serve

8   copies of this Memorandum Opinion and Order and the Judgment on counsel

9   for plaintiff and for defendant.

10

11      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

12

13  DATED: September 29, 2009

14                                              _____
                                                        MARGARET A. NAGLE
15                                              UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

25